IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| BERNARDO C. LANE, | ⌡⌠ | |
| Petitioner, | ⌡⌠ | |
| vs. | ⌡⌠ | No. 11-2094-STA-tmp |
| DAVID R. OSBORNE, | ⌡⌠ | |
| Respondent. | ⌡⌠ | |

ORDER GRANTING RESPONDENT'S MOTION TO DISMISS
ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2254
ORDER DENYING CERTIFICATE OF APPEALABILITY
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

On February 9, 2011, Petitioner Bernardo C. Lane, Tennessee Department of Correction prisoner number 287601, who is currently an inmate at the Southeast Tennessee State Regional Correctional Facility in Pikeville, Tennessee, through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, accompanied by a pretrial memorandum. (ECF Nos. 1 & 2.) Petitioner paid the habeas filing fee. The Court issued an order on September 30, 2011, directing Respondent to file the state-court record and a response to the petition. (ECF No. 5.)

On March 7, 2012, Respondent filed a motion to dismiss the petition as time barred, supported by the state-court record.

(ECF No. 10.) Petitioner has not responded to the motion, and the time for a response has expired. For the reasons stated *infra*, Respondent's motion to dismiss is GRANTED.

I.      **STATE COURT PROCEDURAL HISTORY**

On February 29, 1998, after a jury trial in the Criminal Court for Shelby County, Tennessee, Lane was convicted of three counts of aggravated robbery, especially aggravated robbery, especially aggravated burglary, first degree felony murder, and first degree premeditated murder.[1] With the agreement of the State, the trial court granted Lane's motion for judgment of acquittal on the especially aggravated burglary count and, instead, entered a judgment finding him guilty of aggravated burglary.[2] At a sentencing hearing on March 30, 1998, Lane was sentenced to terms of imprisonment of ten (10) years on each aggravated robbery conviction, twenty (20) years for especially aggravated robbery, three (3) years for aggravated burglary, and life imprisonment for first degree murder. Lane was sentenced as a Range I standard offender, with all sentences to be served concurrently.[3] The

---

[1] ECF No. 1 at 1; *see also* Trial Tr. 488-90, State v. Hanna & Lane, Case Nos. 94-11344, 94-11345, 94-11346, 94-11347, 94-11348, 94-11349 (Shelby Cnty. Crim. Ct.), ECF No. 10-9.

[2] Trial Tr. 491-92, State v. Hanna & Lane, Case Nos. 94-11344, 94-11345, 94-11346, 94-11347, 94-11348, 94-11349 (Shelby Cnty. Crim. Ct.), ECF No. 10-9; *see also* Sentencing Hr'g Tr. at 6, State v. Hanna & Lane, Case Nos. 94-11344, 94-11345, 94-11346, 94-11347, 94-11348, 94-11349 (Shelby Cnty. Crim. Ct. Mar. 30, 1998), ECF No. 10-11.

[3] Sentencing Hr'g Tr. at 3-12, State v. Hanna & Lane, Case Nos. 94-11344, 94-11345, 94-11346, 94-11347, 94-11348, 94-11349 (Shelby Cnty. Crim. Ct. Mar. 30, 1998), ECF No. 10-11.

Tennessee Court of Criminal Appeals affirmed. State v. Hanna & Lane, No. 02C01-9806-CR-00165, 1999 WL 689414 (Tenn. Crim. App. Sept. 9, 1999), *appeal denied* (Tenn. Apr. 10, 2000) (ECF No. 10-15).[4]

On April 2, 2001, Lane filed a *pro se* petition in the Shelby County Criminal Court pursuant to the then-current version of the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-201 to -222.[5] Counsel was appointed to represent Lane,[6] and an amended petition was filed on or about November 3, 2003.[7] An evidentiary hearing on the petition occurred on December 15, 2003,[8] at the conclusion of which the post-conviction court stated on the record its findings of fact and conclusions of law.[9] A written order denying the post-conviction petition was entered on July 1, 2004.[10] The Tennessee Court of Criminal Appeals affirmed. Lane v.

---

[4] The Tennessee Court of Criminal Appeals remanded the case to the trial court "to enter an appropriate judgment reflecting the conviction and sentence of life imprisonment of Defendant Lane for first degree murder, including the merger of two convictions into one judgment for first degree murder." *Id.* at *1.

[5] Pet. for Post-Conviction Relief, Lane v. State, No. P24886 (Shelby Cnty. Crim. Ct.), ECF No. 10-16 at 22-33.

[6] Order Appointing Private Counsel to Represent Indigent Petitioner, *id.*, ECF No. 10-16 at 40.

[7] Am. Post Conviction Pet., *id.*, ECF NO. 10-16 at 41-70.

[8] Hr'g on Pet. for Post-Conviction Relief, *id.*, ECF No. 10-18.

[9] *Id.* at 68-70.

[10] Order Denying Pet. for Post-Conviction Relief, Lane v. State, No. P24886 (Shelby Cnty. Crim. Ct.), ECF No. 10-16 at 72-74.

State, No. W2004-018820CCA-R3-PC, 2005 WL 3116303 (Tenn. Crim. App. Nov. 22, 2005), *appeal denied* (Tenn. June 12, 2006).

On May 22, 2008, Lane, through counsel, filed a Petition for Writ of Error Coram Nobis in the Shelby County Criminal Court.[11] The Petition alleged the existence of newly discovered evidence that was not available at trial, namely, an affidavit by Lane's co-defendant, Redonna Hanna, and a letter from Hanna to his attorney.[12] In an order entered on October 22, 2008, the trial court denied the petition.[13] The Tennessee Court of Criminal Appeals affirmed. Hanna v. State, No. W2008-02504-CCA-R3-CO, 2009 WL 4789887 (Tenn. Crim. App. Dec. 11, 2009), *appeal denied* (Tenn. June 17, 2010).

## II.    PETITIONER'S FEDERAL HABEAS CLAIMS

In this § 2254 petition, Lane contends that he is in receipt of newly discovered evidence that establishes that he is actually innocent, namely, the affidavit of Hanna and the letter from Hanna to his trial counsel. (ECF No. 1 at 5-7.)

## III.   ANALYSIS OF THE MERITS

Respondent has moved to dismiss the petition as time barred. (ECF No. 10.) Twenty-eight U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State

---

[11]    Pet. for Writ of Error Coram Nobis, No. P-24886 (Shelby Cnty. Crim. Ct.), ECF No. 10-24 at 5-12.

[12]    *Id.* at 4-7.

[13]    Order Denying Pet.'s Writ of Error Coram Nobis, Lane v. State, No. P24886 (Shelby Cnty. Crim. Ct.), ECF No. 10-24 at 18-23.

4

court. The limitation period shall begin to run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In this case, the parties agree that the timeliness of the instant petition should be analyzed under 28 U.S.C. § 2244(d)(1)(D), under which the running of the limitations period commences on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." (*See* ECF No. 10-1 at 6; ECF No. 1 at 10.) Lane must show that "he filed within one year of the time he could have discovered the evidence through the exercise of due diligence."

5

McDonald v. Warden, Lebanon Corr. Inst., ___ F. App'x ___, 2012 WL 1632487, at *6 (6th Cir. May 10, 2012). Lane "gets a full year after that date (plus any periods excluded by statutory tolling) to file." *Id.* at *6. The burden is on Lane to prove "that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim." DiCenzi v. Rose, 452 F.3d 465, 471 (6th Cir. 2006).

Respondent notes that the "new evidence" on which Lane relies is an affidavit of his co-defendant, Redonna Hanna, purportedly dated May 24, 2007. (ECF No. 10-1 at 6.) The petition quotes from that affidavit, but a copy is not made part of the record. (*See* ECF No. 1 at 5-6.)[14] The petition does not state when Lane first became aware of this affidavit, other than to state that the evidence was not available at trial "or at any point during the proceedings for post-conviction relief" (ECF No. 1 at 5), and does not address his diligence.[15] Thus, Lane has not satisfied his burden

---

[14] The Petition also refers to a letter from Hanna to Petitioner's trial counsel, Charles Murray, but the date of that letter is not disclosed. (*See id.* at 6.)

[15] Respondent also contends that Lane had the purported "new evidence" when he filed his post-conviction petition. (*See* ECF No. 10-1 at 6.) That appears to be an overstatement. Submitted with Lane's *pro se* post-conviction petition were affidavits from Hanna and from another co-defendant, Andre Hamilton. (*See* ECF No. 10-16 at 32-33.) Hanna's affidavit, which was executed on August 25, 1995, states that he lied to the police when he said that Lane shot the victim. Hanna explained that the real shooter, Derek Coleman, was a good friend. (Affidavit of Redonna Hanna, sworn to on Aug. 25, 1995, ECF No. 10-16, at 33.) Hanna does not state that Lane was not present when the crimes were committed. The affidavit of Andre Hamilton is not legible, although the first sentence says that "I lied to Sheriff Richards when I said Mr. Lane shot Mosley." (Affidavit of Andre Hamilton, sworn to on Sept. 10, 1996, ECF No. 10-16, at 32.) That Petitioner was able to get an affidavit from Hanna in 1995 casts doubt on any claim that he could not have obtained the second affidavit before 2007.

6

of establishing the date on which he could have obtained his new evidence through the exercise of reasonable diligence.

Even if it were assumed that the running of the limitations period commenced on May 24, 2007, the date on Hanna's recanting affidavit was executed, the petition is not timely under § 2244(d)(1)(D). Petitioner filed his petition for a writ of coram nobis on May 22, 2008, two days before the limitations period would have expired. The Tennessee Court of Criminal Appeals affirmed the trial court's conclusions that the petition was not timely and that due process did not require that the statute of limitations be tolled. Lane v. State, No. W2008-02504-CCA-R3-CO, 2009 WL 4789887, at *4-5. Because the petition was untimely, it was not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2) and did not toll the running of the limitations period. In Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000), the Supreme Court held that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id.* at 8, 121 S. Ct. at 364 (emphasis & footnote omitted); *see also* McDonald, 2012 WL 1632487, at *7 ("[N]one of McDonald's state post-conviction petitions and motions were

'properly filed' for purposes of statutory tolling because they were all denied as untimely.") (collecting cases).

Even if the running of the limitations period was tolled during the pendency of Lane's petition for a writ of coram nobis, the instant petition would still not be timely under § 2244(d)(1)(D). The Tennessee Court of Criminal Appeals issued its decision on December 11, 2009, and the Tennessee Supreme Court denied permission to appeal on June 17, 2010. Only two days of the limitations period remained, and the limitations period expired on June 21, 2010.[16] Lane's petition was filed more than seven months later, and it is, therefore, untimely.[17]

"[T]he doctrine of equitable tolling allows federal courts to toll a statute of limitations when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." Keenan v. Bagley, 400 F.3d 417, 421 (6th Cir. 2005) (internal quotation marks omitted). The § 2254 limitations period is subject to equitable tolling. Holland v. Florida, ___ U.S. ___, 130 S. Ct. 2549, 2560, 2562, 177 L. Ed. 2d 130 (2010). "[T]he doctrine of equitable tolling is used sparingly by the federal courts." Robertson v. Simpson, 624 F.3d 781, 784 (6th Cir. 2010); *see also* Vroman v.

---

[16] Because the final days of the limitations period was Saturday, June 19, 2010, Lane had until the close of business on Monday, June 21, 2010 to file a timely petition. Fed. R. Civ. P. 6(a)(1)(C).

[17] Lane's statement that "[t]he present petition for writ of habeas corpus is being filed a little more than one month after the judgment became final (ECF No. 1 at 10) is not explained.

Brigano, 346 F.3d 598, 604 (6th Cir. 2003) (same); Jurado v. Burt, 337 F.3d 638, 642 (6th Cir. 2003) (same). "The party seeking equitable tolling bears the burden of proving he is entitled to it." Robertson, 624 F.3d at 784 (citing Griffin v. Rogers, 308 F.3d 647, 653 (6th Cir. 2002)). A habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland, ___ U.S. at ___, 130 S. Ct. at 2562 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814, 161 L. Ed. 2d 669 (2005)).[18] Lane does not contend that he is entitled to equitable tolling under these standards.

Lane contends that he is entitled to equitable tolling due to his actual innocence. (ECF No. 1 at 10.) The Sixth Circuit has recognized that a credible claim of actual innocence can equitably toll the statute of limitations. Souter v. Jones, 395 F.3d 577, 588-90, 597-601 (6th Cir. 2005). The Court of Appeals contrasted a "gateway actual innocence claim," which was recognized in Schlup v. Delo, 513 U.S. 298, 326-27, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995), with a "freestanding actual innocence claim," which has not been recognized outside the death penalty area. 395

---

[18] Until recently, the Sixth Circuit analyzed five factors to determine the appropriateness of equitable tolling. *See, e.g.*, Dunlap v. United States, 250 F.3d 1001, 1008 (6th Cir. 2001). The Sixth Circuit has held that the standard stated in Holland supersedes the previous test. Hall v. Warden, Lebanon Corr. Inst., 662 F.3d 745, 749-50 (6th Cir. 2011), *pet. for cert. filed* (Apr. 25, 2012) (Nos. 11-10643, 11A869).

9

F.3d at 588-90.[19] Thus, "where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claim." *Id.* at 602.[20] The Court of Appeals contrasted the standard of proof required for gateway actual innocence claims with the "extraordinarily high standards" applicable to freestanding actual innocence claims. *Id.* at 596 n.11; *see also* Schlup, 513 U.S. at 316, 115 S. Ct. at 861 (noting that the evidence of actual

---

[19] *See* House v. Bell, 547 U.S. 518, 555, 126 S. Ct. 2064, 2087, 165 L. Ed. 2d 1 (2006) (declining to recognize the existence of freestanding actual innocence claims in capital cases because, "whatever burden a freestanding innocence claim would require, this petitioner has not satisfied it"); Herrera v. Collins, 506 U.S. 390, 417, 113 S. Ct. 853, 869, 122 L. Ed. 2d 203 (1993) ("We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim."). Pudelski v. Wilson, 576 F.3d 595, 606 n.2 (6th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 3274, 176 L. Ed. 2d 1182 (2010), and Connolly v. Howes, 304 F. App'x 412 (6th Cir. 2008), on which Lane relies (ECF No. 1 at 10), presented "gateway" actual innocence claims.

[20] The Court of Appeals explained the difference between the evaluation of new evidence under this equitable tolling standard and that set forth in § 2244(d)(1)(D):

> A claim filed within one year of the discovery of new evidence proceeds directly to the district court for a determination of the merits of the habeas petitioner's constitutional claims. By contrast, under the Schlup actual innocence gateway, the petitioner must clear the procedural bar of demonstrating a credible claim of actual innocence before a court will reach the merits of his constitutional claims. Because one must meet a significantly greater burden to pass through the gateway, no petitioner would forego filing within the one-year period under § 2244(d)(1)(D) if possible. The actual innocence exception would be limited to the rate and extraordinary case where a petitioner can demonstrate a credible claim of actual innocence and the one-year limitations window has closed.

*Id.* at 600.

innocence to support a gateway actual innocence claim need be less strong than that required to support a freestanding claim where a conviction was not the result of constitutional error).[21]

In this case, the petition does not assert a gateway actual innocence claim because there is no underlying constitutional claim that Lane seeks to litigate. Instead, he has presented a freestanding actual innocence claim. As Respondent has noted (ECF No. 10-1 at 9-10), the Supreme Court has not recognized freestanding actual innocence claims in non-capital cases. See Hodgson v. Warren, 622 F.3d 591, 601 (6th Cir. 2010) (explaining that freestanding actual innocence claims may be raised only in capital cases); Wright v. Stegall, 247 F. App'x 709, 711-12 (6th Cir. 2007); Cress v. Palmer, 484 F.3d 844, 854-55 (6th Cir. 2007). Because this is not a capital case, Lane's freestanding actual innocence claim cannot toll the running of the statute of limitations.

Therefore, the Court GRANTS Respondent's motion to dismiss the petition as time barred. The petition is DISMISSED WITH PREJUDICE. Judgment shall be entered for Respondent.

## IV. APPEAL ISSUES

---

[21] The standard of proof for a gateway actual innocence claim "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. . . . Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S. at 329, 131 S. Ct. at 828.

11

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. Miller-El v. Cockrell, 537 U.S. 322, 335, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003); Bradley v. Birkett, 156 F. App'x 771, 772 (6th Cir. 2005). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 336, 123 S. Ct. at 1039 (internal quotation marks & citations omitted)); *see also* Henley v. Bell, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. Miller-El, 537 U.S. at 337, 123 S. Ct. at 1039; Caldwell v. Lewis,

414 F. App'x 809, 814-15 (6th Cir. 2011) (same). Courts should not issue a COA as a matter of course. Bradley, 156 F. App'x at 773.

In this case, there can be no question that the petition is time barred. Because any appeal by Petitioner on the issues raised in this petition does not deserve attention, the Court DENIES a certificate of appealability.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5). In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a),

that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED.[22]

IT IS SO ORDERED this 7th day of August, 2012.

                                        **s/ S. Thomas Anderson**
                                        S. THOMAS ANDERSON
                                        UNITED STATES DISTRICT JUDGE

---

[22] If Petitioner files a notice of appeal, he must pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).